```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                   EASTERN DIVISION
```
_____

| | |
|---|---|
| **MELISSA M.,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 25-cv-1025-TMP |
| | ) |
| **FRANK BISAGNANO,** | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

_____

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**
_____

On January 27, 2025, Melissa M. ("Plaintiff") filed a written request seeking judicial review of a social security decision.[1] Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits and Title XVI supplemental social security income.[2] (ECF Nos. 1, 15.) For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] After the parties consented to the jurisdiction of a United States magistrate judge on March 26, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11.)

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by

## I.   BACKGROUND

On October 13, 2021, Plaintiff filed her application for disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 404-434. (ECF No. 10 at PageID 166.) Her alleged onset date of disability was June 10, 1990, but she amended it to July 6, 2019, prior to her hearing before the Administrative Law Judge ("ALJ"). (Id.) Plaintiff's claim was initially denied on January 26, 2022, and was again denied upon reconsideration on March 16, 2023. (Id.) She then requested a hearing before an ALJ. (Id.)

The hearing before the ALJ was held telephonically on November 14, 2023. (Id.) The ALJ issued his written decision denying benefits on February 14, 2024. (Id. at PageID 166-82.) Plaintiff then filed her request for review with the Appeals Council on March 4, 2024, and it was denied on December 18, 2024. (ECF No. 15 at PageID 1642.) Plaintiff appealed the matter to this court on January 27, 2025. (ECF No. 1 at PageID 1.) Due to the denial of the Appeals Council to hear Plaintiff's appeal, the February 14, 2024 decision in which the ALJ denied Plaintiff benefits represents the final decision of the Commissioner.

---

reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

In that decision, the ALJ considered the record and the testimony given at the hearing, then used the Act's required five-step analysis to conclude that Plaintiff is not disabled for the purposes of receiving Title II and XVI benefits. (ECF No. 10 at PageID 167.) At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 6, 2019, the alleged onset date of her disability. (Id. at PageID 168.) At the second step, the ALJ found that Plaintiff had the following severe impairments: neurological disorders (other disorders of the nervous system), obesity, chronic fatigue syndrome, depressive disorder, and bipolar disorder. (Id. at PageID 169.) The ALJ found at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Id.)

The ALJ then concluded that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1467(b) and 416.967(b) except she can occasionally climb with respect to ramps and stairs; must never climb with respect to ladders, ropes and scaffolds; can occasionally balance, stoop, kneel[,] crouch and crawl; should avoid concentrated exposure to vibration and hazards such as dangerous machinery, unprotected heights and similar circumstances . . . [and] is limited to simple tasks with few workplace changes; can concentrate for 2-hour blocks at a time; should only have occasional interaction with supervisors, co-workers, and the general public.

(Id. at PageID 171-72.) In coming to this conclusion, the ALJ first considered "whether there [was] an underlying medically determinable physical or mental impairment(s)" and then evaluated the "intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the extent to which they limit the [Plaintiff's] work-related activities." (Id. at PageID 172.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that the Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (Id. at PageID 173.)

The ALJ first looked at the record of Plaintiff's treatment and physical symptoms. He stated that, beginning in 2019, Plaintiff's treatment consisted primarily of emergency room visits and medication, treatment the ALJ referred to as "conservative." (Id.) He noted that in July of 2019, Plaintiff had a musculoskeletal examination that showed no tenderness, a normal gait, and no nerve pain or symptoms during a straight leg raise test. (Id.)

Throughout 2020, the treatment methodology remained the same and Plaintiff continued to have occasional emergency room visits. (Id.) The same was true in 2021, although she had an increase in emergency room visits for her symptoms, totaling four that year.

(Id. at PageID 173-75.) Plaintiff also saw her primary care provider three times in the fall of 2021, complaining of radiating low back pain, lower extremity pain, numbness, and tingling, and knee pain. (Id. at PageID 173.) At those appointments, the ALJ noted that Plaintiff presented multiple benign signs, such as normal gait and posture, normal strength and sensation, lack of lower extremity edema, and normal lumbosacral spine movements. (Id.) He stated that such findings are inconsistent with Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. (Id.) Primary care provider notes from 2022 and 2023 showed that Plaintiff "consistently reported symptoms that included lower back pain with radiation down the lower extremities, as well as lower extremity numbness." (Id. at PageID 174.) Physical exams during this time "consistently revealed abnormal signs, including the use of a walker." (Id.)

In January of 2022, Plaintiff attended a medical consultive examination. (Id. at PageID 175.) At this exam, Plaintiff brought a walker that she said she had borrowed from a friend because her pain was so bad. (Id.) The ALJ stated that the results of the examination "were inconsistent with the statements about the intensity, persistence, and limiting effects of the [Plaintiff's] symptoms." (Id.) The examining doctor found the "abnormal results . . . unrealizable" and said that "watching how she walks it does appear that she is not very familiar with [the walker], she picks

- 5 -

it up and moves it quite a bit versus rolling it and using it to steady her." (Id.) He said that "he did not see any medical weakness indicating why the [Plaintiff] would need to be on a walker" and that "the utility of the walker was unproven[.]" (Id.) The exam also "revealed a full range of motion in the neck, hands, wrists . . . and elbows . . . somewhat diminished range of motion in the hips and knees, [and] . . . normal strength in the upper and lower extremities[.]" (Id.)

In May of 2022, an MRI was done of Plaintiff's lumbar spine. (Id.) The results showed "degenerative disc disease at the L4-5 and L5-S1 levels, including small broad-based disc bulging and bilateral facet disease at the L4-5 level, as well as broad based annular disc bulge with small annular tear and facet arthropathy at the L5-S1 level." The ALJ noted that despite these findings, there was no evidence of spinal stenosis or neural foraminal impingement. (Id. at PageID 174-75.) During this period, Plaintiff was sometimes seen using a walker and sometimes not. (Id. at PageID 175.) In May 2022, Plaintiff also showed normal gait, strength, and sensation. (Id.)

In February of 2023, another medical consultive examiner examined the Plaintiff and this time found that she had no restrictions. (Id. at PageID 178.) The doctor noted that Plaintiff used a walker at the appointment but was "observed prior to the exam merely pushing the walker in front of her and walking at a

brisk pace unimpaired." Then, during the examination, she showed an "obvious right-sided limp with and without the walker." (Id.) She also had no problems getting up from a chair, "a full range of motion in [her] cervical spine, hands, wrists, elbows, and shoulders, as well as largely preserved range of motion in [her] hips and knees." (Id.) She did, however, have a limited range of motion in her thoracolumbar spine. (Id.)

Plaintiff's primary care physician observed that Plaintiff used a walker between February of 2022 and April of 2023. (Id. at PageID 175.) In July of 2023, Plaintiff was referred by a treatment provider to a pain specialist and neurologist; her primary care provider also prescribed her with a motorized wheelchair. (Id. at PageID 177, 179.) The ALJ noted that even considering the use of the walker and the fact that a limited range of motion was sometimes found, the "medical record does not document a medical need for any assistive devices, including a walker or motorized wheelchair." (Id. at PageID 174.) Ultimately, the ALJ concluded that Plaintiff was not disabled under the Act. (Id. at PageID 182.)

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)); Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); see also Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the

other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs., 893 F.2d 106, 108 (6th Cir. 1989)); Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)); see also Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); see also Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove they have a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security

Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, the ALJ must proceed to the fifth step, where they determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

## C.   Substantial Evidence in Support of the RFC

Plaintiff argues in her brief that the ALJ's finding that Plaintiff has an RFC to perform light work is not supported by substantial evidence. (ECF No. 15 at PageID 1644.) She avers that the ALJ erred in not finding that she needed a wheelchair or other assistive device. (Id. at PageID 1645-46.) In making this argument, Plaintiff refers to a single paragraph in the ALJ's opinion. (Id. at PageID 1645.) In that paragraph, the ALJ "recognize[d] that physical examinations during the [Plaintiff's] primary care provider visits from early 2022 to the latter part of 2023 consistently revealed abnormal signs, including the use of a walker" and that "examinations generally showed that [Plaintiff] had a right leg limp and used a walker[.]" (ECF No. 10 at PageID 174.) The ALJ continued, stating that "provider notes from April 2023 to September 2023 consistently showed that the [Plaintiff's] gait was affected by her right leg limp, and that she used a slowed and stooped gait, as well as pain with back range of motion[.]" (Id.) The opinion further recognized that in "September 2023, [Plaintiff's] primary care provider stated that the [Plaintiff] need a motorized wheelchair for locomotion around her home and in [the] community." (Id.) But the ALJ ultimately concluded that "the medical record does not document a medical need for any assistive devices, including a walker or motorized wheelchair." (Id.)

Plaintiff argues that the ALJ's conclusion that Plaintiff does not need a wheelchair or walker is contradicted throughout the opinion by "abnormal findings, reported use of assistive devices, and a doctor's note that states Plaintiff has medical need of a motorized wheelchair." (EFC No. 15 at PageID 1645.) She further refers to the results of her MRI, stating that they "are more than mild" and that "there is nothing to indicate that [the MRI] findings are inconsistent with the need for assistive devices." (Id.) She also argues that the ALJ's characterization of her treatment as conservative is a mischaracterization. (Id. at PageID 1646.) Plaintiff states that "[p]rescription of a narcotic drug, emergency room visits, and repeated injections are not conservative treatment, nor do they contradict the need for assistive devices." (Id.)

She argues that "the ALJ has entered numerous contradictory findings[,] stated that medical documentation of the need for an assistive device is not in the medical record[,]" and "fail[ed] to consider [her] need for a motorized wheelchair as prescribed by her primary care provider." (Id.) Finally, she concludes that her "need for a motorized wheelchair is crucial to the determination of her claim for disability and should have been considered by the ALJ in the RFC finding" and that "[h]aving failed to account for important evidence and entering contradictory findings regarding

- 13 -

the medical evidence of record, the ALJ's RFC finding of light level work is not supported by substantial evidence." (Id.)

Contrary to what the Plaintiff suggests, the ALJ did not state that "medical documentation of the need for an assistive device is not in the medical record[.]" (ECF No. 15 at PageID 1646.) Rather, the ALJ stated that the "medical record does not document a medical need for any assistive devices," meaning that the medical record considered as a whole does not lead to a finding that an assistive device is needed, not that there is no documentation at all suggesting an assistive device could be needed. (ECF No. 10 at PageID 174.) The ALJ clearly acknowledges that some evidence in the record *does* suggest such a need. (Id.) The ALJ found that other evidence, however, ran contrary to a need for an assistive device. For example, while Plaintiff's primary care provider noted a need for a wheelchair, two separate consulting medical examiners found that Plaintiff did not need an assistive device. (Id. at PageID 174, 176.) It is the role of the ALJ to "evaluat[e] . . . experts' findings and reach[] a reasoned determination as to the applicant's disability status." Justice v. Comm'r of Soc. Sec. Admin., 515 F. App'x 583, 588 (6th Cir. 2013); Flasco v. Comm'r of Soc. Sec., No. 24-cv-01892, 2025 WL 1295327, at *9 (N.D. Ohio May 5, 2025). There is substantial evidence in the record that suggests a need for an assistive device and evidence to the contrary; as is his job, the

ALJ weighed this evidence and came to the conclusion that no assistive device was needed. (ECF No. 10 at PageID 174.)

As to her argument regarding her MRI results, Plaintiff does not explain why she thinks that the ALJ's findings about her MRI results are contradictory to the conclusion that she does not need an assistive device. (ECF No. 15 at PageID 1645.) All Plaintiff asserts is that they are "more than mild findings" and that "nothing [indicates] that these findings are inconsistent with the need for assistive devices." (Id.) These statements are conclusory and fail to explain why the MRI results are consistent with the need for an assistive device. Further, even if Plaintiff's MRI results showed that she might need an assistive device, the ALJ would still be within his authority to find that Plaintiff does not need an assistive device. This is because, as discussed above, there is substantial evidence that suggests Plaintiff does not need an assistive device. (See, e.g., ECF No. 10 at PageID 174-76.) It is in the ALJ's purview to make such a determination.

Finally, although the Plaintiff asserts that conservative treatment is a mischaracterization of her medical treatment, she does not cite any authority for it. (ECF No. 15 at PageID 1645-46.) The ALJ's depiction of her treatment as conservative is supported by Sixth Circuit precedent. See Adams v. Comm'r of Soc. Sec., No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (characterizing epidural steroid injections, medial branch blocks,

and prescription pain medications as conservative treatment for back pain, supporting a decision that the plaintiff did not have a disability). Further, the ALJ did consider these treatments in his decision, even though he ultimately decided that the treatment supports a finding that Plaintiff does not need an assistive device and can perform light work. (ECF No. 10 at PageID 171-72.) As with her argument regarding her MRI results, Plaintiff's treatment was just one factor that the ALJ considered and there is other sufficient evidence supporting the ALJ's decision.

The ALJ's conclusion that Plaintiff has an RFC of light work is supported by the record. Although there is certainly evidence in the record that could lead a reasonable person to conclude that Plaintiff is disabled, the relevant inquiry is whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g). The ALJ discussed instances where Plaintiff had a normal gait, negative straight leg tests, normal motor function, normal extremity strength, and normal range of motion. (ECF No. 10 at PageID 173, 175-76.) He pointed to the findings of two consulting medical examiners who found that Plaintiff did not need an assistive device and two more medical consultants who opined that Plaintiff could perform light work with some exceptions. (Id. at PageID 176-78.) Since there is substantial evidence to support the ALJ's decision, the court must affirm that decision.

### III. CONCLUSION

- 16 -

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM  
Chief United States Magistrate Judge

October 2, 2025  
Date